Could the clerk call the next case, please? Okay, Mr. Minnelli. Yes, ma'am. May it please the court. My name is Chris Minnelli at my end. I'm here for Mr and Mrs Franchini. Um, this case is a civil procedure issue pretty much regarding res judicata. And like a lot of civil procedure cases, it can be misconstrued as being extremely complicated. It's my client's position this is a very simple case. We'll try to go slow and kind of hash out the different pieces because civil procedure, again, is not the most fascinating thing in the world. But I do think that we can make it pretty clear and hopefully get to the bottom of this. Generally, this case deals with two cases. There was a case I'm going to refer to as the 06 case that was between the same parties that ended in 2011. The two primary orders in that particular case are August 11th of 2011 and that dismissed with leave to replead the third amended counterclaim, which is the dispute here in this case. And the August 29th, 2011 order from the 06 case, which terminated the case in its entirety. Um, the problem with this particular case is that a lot of the things that lawyers take in civil procedure as, um, just granted, you know, what is a dismissal for one of prosecution mean? What is a voluntary dismissal? How does it work? Um, it's never really been the issue in an appellate case. And I think that's where a lot of the problems in this case, um, come from. So we'll go ahead and slowly hash through this. Um, I understand that you've read the pleading, so I won't go through it verbatim, but just to give you an overarching outline. Um, I see the August 29th, uh, order as not being the basis for res judicata, um, either because A, it's actually a dismissal for one of prosecution. B, it's a voluntary dismissal, but the claim splitting doctrine that my opponent has brought up in a number of, uh, um, parts of his brief, uh, would not apply. Or C, it is res judicata, but there's an exception to it that the Supreme Court has recognized for continuing and recurring harm. So we'll go through each of those, um, in turn. First off, as far as a dismissal for want of prosecution, um, as a preface, I want to bring up what my, uh, opponent has, has brought up to and that my predecessor, um, at the trial court level didn't raise this is, uh, on appeal, you can't really bring arguments that weren't raised at the trial level. Well, an, an appellant can't bring an argument that wasn't raised at the trial level. An appellee can't raise anything supported by the record. Sure, but I, I'm the appellant, so that would, um, unfortunately. Well, your client can raise it, I'm sorry. Oh, well. I mean, your, your opponent. Sure, sure. Well, he, um, my opponent was simply saying that I couldn't raise the argument because I did. Um, the reason I raised it is that I don't think that the court at the trial level or either of the attorneys really took a good look at what the August 29th order was, and I think that none of them really made the mark. Um, it's my opinion that it is actually a dismissal for want of prosecution, and the reason I say that is to terminate a case, there's really only three ways that I've been able to find. Uh, there's an involuntary dismissal, uh, pursuant to motion, um, from 219, uh, 215, some or, uh, there's a dismissal for want of prosecution. Somebody doesn't show up, they, they drop the ball, something happens, uh, the court exercises its inherent power to just get rid of it. Okay. Well, I don't believe that it can be a voluntary dismissal or an involuntary dismissal that terminated the case because both of those two, um, statutory elements require notice and motion. Um, if you look at the plain language of, uh, 1009 for voluntary dismissal, it has to be raised on notice and motion to the other side, um, and then payment of costs and some other ancillary matters have to be done too. The problem is that in this record, I don't see any, um, any evidence whatsoever that there was notice and motion that my clients wanted to voluntarily dismiss the case. Um, whether or not there's notice or motion, I mean, you participated in the hearing, didn't you? Um, well, my, my clients, uh, didn't show up. Uh, their attorney did, um, at the trial level in the 06 case. Um, what I understand from the transcripts, uh, being that I wasn't there was that they wanted it to be a dismissal for one of prosecution. Um, my opponent wanted it to be a voluntary dismissal. Um, the court was confused because they had never seen anything because, uh, according to the record, there wasn't anything pending, um, before the court at that time. Um, the August 11th, um, order had, uh, dismissed and given leave to replete, uh, the counterclaim that was currently before the court. Um, my clients had 11 days to do that. They didn't replete anything and they showed up at trial, um, unprepared essentially. Um, so it's, it's my, um, argument that without that notice and motion and really anything before the court, there was nothing to voluntarily dismiss. It was a dismissal for one to prosecution. Um, the, um, can I interrupt you? Sure. Sure. The August 11th order was a dismissal on the merits with leave to replete, right? Well, that, that, um, goes into what dismissal on the merits, um, would indicate at least under the casehold I've read that there can't be any other pleadings after that. It would be a non-final order from our perspective because there was leave to replete. Uh, the trial judge in the transcript that is a part of the record did note that, um, she believed that, well, you didn't do it right this time. We have trial coming up in a few weeks. I'm going to give you a chance. If you want to try it, go ahead. You've got 11 days, go ahead and file a fourth amended counterclaim, and then we'll try the fourth amended counterclaim on August 29th. Um, from what I can understand, you know, gather from the record, it looks like there was no fourth amended counterclaim filed. So when, um, my client's, uh, trial attorney in the 06 case showed up, um, there wasn't anything to try. Um, he said his clients weren't ready to go forward and the case was dismissed. Um, that, that seems pretty classic to a dismissal for want of prosecution. Um, I had, uh, uh, cited a few different cases in my brief. Um, unfortunately this is one of those gray areas that doesn't really define what a dismissal for want of prosecution is, but we do know that from the cases, if, um, and if a, uh, litigant has any culpability whatsoever in not moving the case forward, that would be an appropriate time for a dismissal for want of prosecution. Um, if there's prejudice that results to the other side, then that would be, um, an appropriate time for a dismissal for want of prosecution. Um, the, the, the point is that my client showed up, there was nothing before the court. Um, they weren't ready to proceed forward on anything at that point. Um, so I do believe that the, um, order really should be construed as a dismissal for want of prosecution. Well, didn't it go beyond that? Didn't your client's counsel also say to the judge, judge, I can't in good faith plead, uh, file a, uh, plead an amended complaint, therefore dismiss it? Well, unfortunately I wasn't that, that attorney. I don't really know what I can't plead in good faith is. I assume, you know, if we were going to sit here and speculate, it could be one of two things. One, they just couldn't plead the facts. Um, and that way, you know, they couldn't proceed forward. So the two, if the client wasn't being, my client now wasn't being, um, uh, quick in responding to phone calls, wasn't, you know, I, I don't know why he couldn't plead in good faith. If he couldn't do the research, that would be another reason. Um, unfortunately the record is devoid of why specifically he couldn't do that. Um, but the, the, uh, I guess benefit from my client's perspective in a dismissal for want of prosecution is the savings clause at a, uh, I believe it's 13-217, which gives one year to refile a case that's dismissed for want of prosecution. Um, so I, I would, uh, you know, forward to the court that it should really be a, uh, DWP order that was entered on August 29th, giving my client, um, that one year, uh, umbrella to, to refile his case and proceed forward. Um, the second, uh, argument I wanted to, to discuss, uh, and hash out would be, well, maybe before you get there, if the, the DWP gives you a one year, right? But also that same statute, if it was, if it's a voluntary dismissal, it gives you a year also. That's correct to an outside of the res judicata realm. Exactly. So why should a, whether, whether it's a voluntary dismissal or a DWP, why should, uh, why should those be treated differently with respect to res judicata? In other words, why shouldn't the law that applies to voluntary dismissals also apply to, uh, DWPs under the, as far as claim res judicata and claim split? It really goes with the policy of res judicata, um, at least in my opinion. Um, there are no cases that I could see that where, uh, a DWP, um, was applied to a claim splitting, uh, situation like my opponent's trying to raise. The reason I think the claim splitting applies to voluntary dismissals is that they don't want, just jurisprudence does not want a litigant to be able to just voluntarily terminate litigation, regroup, and then start something in the future. Isn't that exactly what happened here? Well, I, again, I don't know what good faith means, um, as far as, it is, it is what happened, but I mean, just generally speaking, you know, an attorney might be in a car accident on the way to court and have a DWP that certainly wouldn't fall into the policy of, uh, what the claim splitting doctrine is meant to, uh, prohibit. Um, I do think that DWPs can encompass a much wider variety of factual situations than a, uh, a voluntary dismissal can, especially because in some cases, in many cases of DWP, the litigant has nothing to do with that. Um, could they be culpable? Sure. But that doesn't necessarily mean they intended to end the case. So, I mean, there may be cases, as you said, the reason, but in this case, I mean, we're in a semantic battle over whether this is a voluntary dismissal or a DWP. And, and, but it seems to me the facts are just as you described, and that is they, they, they quit and dismissed and then went and regrouped and now it's filing them. I mean, that is what happened. That's correct. Um, the problem is that I don't really know from the record what my client's intent was. Um, I, I can't really forward that, but it would seem that if there was no malicious intent there, or if there was no, um, reason that they would have one over the other, a DWP really should in jurisprudence going forward be separate, uh, from the claim splitting doctrine. Um, now of course my client does, going to the second point, my client does forward that if it is a voluntary dismissal, if for whatever reason, the August 29th, um, order is construed in that way, the claim splitting doctrine would not apply, um, in that case. The, I guess, gold standard case that everybody looks at is, uh, the Ryan case. And what that entailed was, um, a plaintiff in a personal injury case had sued, um, a police department under both, um, an intentional and a, uh, negligence theory of, uh, recovery. Um, one of the claims was, uh, found to be barred after motion practice for, um, uh, immunity purposes. Um, as the police officer was a municipal official, he had official immunity. Um, the, the claim, uh, the negligence claim went through, I believe, uh, three different, um, three years of, uh, discovery, motion practice, what have you. Um, the attorney died on the eve of trial. They ended up voluntarily dismissing and then refiling the claim later. Um, the court held in that case that they could not do that because of claim splitting, because res judicata would encompass all claims that were litigated or could have been litigated in a previous case, um, under the same factual situation. And as far as, um, you know, if the other elements of res judicata are met. Um, that is a little bit different than our case. Um, and it's been hashed out in its progeny after that. Um, another case to, to look at that kind of gives you an idea here is, uh, the Kiefer case. Um, Kiefer versus, uh, Rust-Oleum. Rust-Oleum's a company that makes paint products and they, uh, sell paint in cans. And, um, a few years ago, I guess a can of paint exploded in, uh, Canada and injured somebody. And the, uh, court found, uh, in that case that, uh, Canadian law would apply and they don't have, uh, uh, strict liability type claims up there for products liability. So they couldn't, uh, plead that. But the court did, um, allow them to replead negligence count. And the, the case proceeded through discovery. It was eventually voluntarily dismissed. And the court, um, after it was refiled, um, found that it is res judicata because even though there was leave to replead, there was no factual situation, uh, that could be pled, uh, for the strict liability claim, uh, to, to be redone. Um, so it's a, I guess my point is that here, um, each different, um, version of the amended counter claim, number one was just one, uh, count, um, from our perspective. Uh, there wasn't two counts. There was three counts to, um, to split. So, you know, they did change their theory after I believe the second counter claim, but unfortunately the record is devoid as to whether, um, the court found that there was any, uh, possibility for them to plead a negligence claim or if they just chose to plead something else. Um, it's all based on the same factual, uh, the same facts, um, within the, uh, um, relationship between the two landowners, uh, in the case. Um, there, there's a number of cases that are in my brief that, uh, discuss, um, single count, uh, claims. If a single count is, uh, voluntarily dismissed, um, it can be re, repled. There's no claim splitting there. Um, if a single count is, um, um, you know, somehow disposed of via 615 or 619, um, and leave is granted to replead, uh, and there's no repleading within the time and the case is, uh, you know, terminated in the future, that's not a final order. Um, res judicata does not apply. Um, it's our pers, uh, perspective, um, from the argument in my brief that, uh, because it's a single count, uh, they didn't have to replead. They didn't go to trial. Um, it was terminated in some way. Claim splitting doesn't apply because there weren't two, two counts. And, uh, and that's, um, where we're at. Um, the, the only other thing I do want to mention just briefly is, uh, my opponent had brought up the idea that the trial court could, um, look at her notes or perhaps look at her memory as to what her intentions were in the other case. Uh, this is an unusual case because the same trial judge, uh, was presiding over the 06 case and the 11 case. Um, please, please, please, please, if you are going to, uh, discuss this in your opinion, um, transparency is a very important part of the rule of law. And I don't believe that the, uh, concept of adjudicated facts and picking facts out of, um, outside the record to apply to a case really would apply to a single judge's interpretation of his or her own, um, thoughts from a previous case. There's no transparency there whatsoever. I, I can't go and examine a judge as to what he or she may have thought or believed in a prior case if they want to take out their rationale. Um, it's not written down on paper. Um, it's a very, very important thing that the rule of law, um, and the common law in general, that we have transparency. So, um, I would, uh, request that in that aspect, you, uh, discount anything that's not in the immediate record. Any other questions? Thank you, Mr. Thank you. Mr Saber. Good afternoon. Good afternoon. May it please the court. My name is Adam Saber and I represent the defendants. We ask the court to affirm the trial court's dismissal of the case below based on race judicata. The dispositive issue in this case is whether there was an adjudication on the merits in the August 11, 2011 order. Uh, the way that we got here was that in the third amended counterclaim, the some of the very same tort theories of recovery that they tried to assert in the second action to a breach of contract theory of recovery, having abandoned the tort theories. And the reason they did this is significant because in essence, they outmaneuvered themselves. They asserted a breach of two contracts, what is known as the agreed order and what is known as the grant of easement, two separate contracts. And they attempted to conflate these two facts that they had alleged, if true, only stated a breach of the requirements under the agreed order, not any of the requirements in the grant of easement, but they wanted to avail themselves of the attorney fee provision in the grant of easement. So they tried to conflate the two contracts and assert a single claim for breach of what they hoped the court would find was a single contract. Now, of course, a contract can consist of more than one writing, but these didn't. So we moved to dismiss, the defendants moved to dismiss, one of those two breach of contract claims. Now, under section 2-603B of the Illinois Code of Civil Procedure, had things been done correctly, plaintiffs would have pleaded those as separate counts. That's what it requires. However, when a court is viewing the sufficiency of a pleading, our jurisprudence says, look at the substance, not the form. And so apart from how it might be structured, what are the substantive allegations? What are the claims being asserted? It was abundantly clear here from the Third Amendment counterclaim that there was a breach of two separate contracts being alleged. So what did the trial court do? The trial court dismissed the claim for breach of the grant of easement, finding that there were no facts that could be pleaded that would state a claim. Now, realize that my clients were the grantee of the easement, not the grantor. Essentially, the grant of easement didn't require my clients to do anything. So how are you going to allege a breach of that contract? So the court agreed with our view and dismissed the claim for breach of the grant of easement with prejudice, but granted leave to replead whether that was going to be to reassert a claim for the breach of the agreed order and or assert some other claims, possibly the earlier tort claims. I wonder if the trial court had that in mind when the trial court commented, you see this in the transcript in the record, that the trial court thought maybe the plaintiffs could assert such a claim. And I wonder if that wasn't a reference to the tort claims that had been asserted previously. The Kiefer versus Rustolian case is indistinguishable from this case. This case, respectfully, has already been decided. This case will add nothing to our jurisprudence. It's Kiefer all over again. What happened in Kiefer is that you had a negligence claim and a products liability claim. Now, importantly, those two claims were based on the same operative facts. They weren't based on separate sets of facts. The product liability claim, the court found, the plaintiff could not state a product liability claim. But granted leave didn't say in the order that the dismissal was with prejudice, true of our August 11 order, and instead said in the order, with leave to replete, true of our August 11 order. And then there was some discussion on the record in Kiefer that the plaintiff's attorney needed to decide if he was repleting or not. Similarly, that same discussion you'll find in our record here. Kiefer controls here, and the various other cases cited by the plaintiffs, are fundamentally distinguishable. And they're fundamentally distinguishable because the trial court in those other cases allowed the plaintiff to replete the claim that was dismissed. Okay, and that's the difference between Kiefer on the one hand, and cases like Apollo and Jackson on the other hand. Here, the court didn't let plaintiffs replete the claim for breach of grant of easement. There's nothing the plaintiffs could have said to state a claim for a breach of that contract. The trial court did allow them to replete, as I say, either to reassert the claim for breach of the grant of easement, or perhaps to assert one or more other claims. Now, there was a reference by counsel in his report to the trial court's comments in the order from which this appeal was taken. And counsel urges this court not to consider those comments. I don't think it's dispositive either way, because I think the record from the first action, the original action, is more than adequate to show that what the court did was dismiss that claim for breach of grant of easement with prejudice. And I would point the court specifically to the third amended counterclaim. The contract's attached to the third amended counterclaim, and the argument on August 11, and the court has the transcript of that argument. And what you'll see, if you just read the grant of easement, is there really was nothing these plaintiffs could plead to state a breach of that grant of easement. And so why would the trial court have allowed leave to replete that? And indeed, that is not what took place here. But in addition to all of that record evidence, because of the unique posture of this situation where we have the same presiding judge over both cases, this court does have the benefit, in the very order from which this appeal is taken, of the court's statement of its intent. And so the goal of this court, under all of the reported cases, Kiefer and the other cases cited in our brief, is to determine the intent of the trial court with respect to the August 11 order. And what is unique here is we actually, ordinarily we would have in the refiled case a different judge, who now needs to look back to the judge's order in the original case and figure out, what did that judge mean? We don't have that here, and it's a little bit unique. And I think this particular question is probably one of first impressions. Certainly I couldn't find anything on it. And so the question is, the court's statement of its intent is in the record. We're not going outside of the record. And so one of the questions, if the court even reaches this, is whether it's appropriate to consider, in the order from which this appeal is taken, the trial court's own statement of its intent. This court doesn't need to make inferences about surrounding circumstances, pleading about what the trial court intended, because the trial court's told us. And that's in our record. Well, the August 11 order, was it ambiguous on its face? Was it? Probably. It probably was. And that's why cases like Kiefer's say, there are no magical words here. And the words used in the order or not used in the order are not determinative. So let's take a look at a broader picture and determine what the court's intent is. But it certainly was not a model of clarity. I'll say that much. So I think this court can consider the trial court's statement of its intent. But I think even if it doesn't, the record makes pretty clear, especially if you just look at the terms of the grant of easement, that there was nothing they could have repleted to state a claim. Now, there's been this argument, and it is an absolute fallacy, absolute fallacy, that whether there was a single count or more than one count dictates whether res judicata applies. And I believe the source of this misunderstanding is the idea that claim splitting is something different from res judicata or some subset of res judicata. It's not. It's another term that describes res judicata. All claims that can be brought must be brought. And so we see in the reported case law that frequently the cases arise in the factual situation of one or more claims being adjudicated on the merits and the plaintiff then taking a voluntary dismissal. That's not surprising that they arise in that context. As a practical matter, that's where you'd expect them to arise. Parties generally assert all viable claims that they have. Following an adjudication on the merits, either because of that adjudication or for other reasons, a party may decide unwisely that it's going to voluntarily dismiss and then refile. Well, the attorney and the party need to know that under the rule of reign and its progeny, you can't do it. If there's an adjudication on the merits, you can't take that voluntary dismissal. Now, I want to get to a point. And so whether there was a single count asserted in the first action or more than one count doesn't matter. If there had been a single count and it had been adjudicated on the merits, that would in fact bar any later action for any other claims based on those same operative facts. That doesn't matter if there's one claim or two claims. And I think the words claim splitting have led to this sort of misunderstanding about what it is. Claim splitting is nothing more than another term for three possibilities for, in my mind, for what the later order, the August 29 order was. So we have an adjudication on the merits of August 11, leave to replead, and then we have that later order on the day of trial just a couple of weeks later. And counsel has said, wants it to be a DWP. I shouldn't say counsel, I should say plaintiffs want it to be a DWP because they perceive that your point, Justice Smith, which I agree with, if that was your point, which is if you read 13-217, DWP and a voluntary dismissal are in the same list. They're not treated any differently. So if there's an adjudication on the merits followed by a voluntary dismissal or a DWP, you can't refile. There's no different treatment there. It so happens that our cases arise in the voluntary dismissal context for the practical reasons that I've stated. And I haven't found a case where it was a DWP and a court then addressed the issue just because that factual situation hasn't come up in a reported decision. But the treatment is the same. That said, the last possibility, a very distant third possibility, would be a DWP. But there is nothing in the record that supports a finding that that August 29 order is a DWP. A DWP is to, as counsel pointed out, is to penalize a litigant for delay or dilatory tactics. You can comb this record. You will not see any discussion of delays, of prejudice, of the court imposing its will. There is no reason to doubt that the trial court would have even given them more time if they still wanted to try and replead. There's nothing in this record to suggest a DWP. That said, I don't think the result would change in any event. So if it's a voluntary dismissal and there was an adjudication on the merits in that August 11 order on one or more claims, i.e. the claim for breach of the grant of easement, then they could not refile any claims based on the same operative facts. And the plaintiffs admit, by the way, that the second action is, in fact, based on the same operative facts as the first action. Now, one of the arguments that they make, that plaintiffs make, this is potentially important, is that August 11 order contained leave to amend language. And so there are some cases that say, the last order shouldn't contain leave to amend language because a trial court retains jurisdiction to allow more time to amend. And so the last order shouldn't contain that leave to amend language for the sake of clarity, that the case is, in fact, concluded. And we have the order that satisfies that rule. We have the August 29 order that leaves no doubt the case is concluded. Doesn't contain leave to amend language. And so that order could be just that. That further order, and these are cases cited by the plaintiffs, relied on by the plaintiffs, that further order that says, we're done. So that on appeal, a court reviewing this can say, ah, this case was concluded. This court wasn't granting any additional time to replete. And the August 29 order is crystal clear on that point. Thank you. Finally, with respect to the, let me make one comment relative to voluntary dismissal. And counsel said, ah, it couldn't be a voluntary dismissal. There was no notice, payment of costs. And we've cited in our brief, those things would have been for the benefit of my clients. We've cited that a party can always waive statutory rights. And we've even cited cases that arise under the former voluntary dismissal rule that says that you can waive what you're entitled to, their notice. His clients were present at that hearing, and they allowed this to happen. Relative, finally, relative to the continuing and recurrent exception, even the plaintiffs give this short shrift, seven sentences in their brief. They gave it short shrift below. Ryan addressed this exception and said, the policies that favor preclusion are not, were not overcome in that case, and that there would be no inequitable result by not applying that exception in that case. That is true here as well. They have relied in their brief on some vague and conclusory allegations to try and get inside of that exception. Those are just not sufficient. That's number one. Number two, the only evidence in the record shows that there had been no flooding. That's what this counterclaim was about, flooding. There had been no flooding for some time before even the first action was dismissed, let alone before the second action was filed. And so there was no evidence of any recurring violation. Third, and somewhat related to the second point, is that they alleged the same exact damages in the second action that they alleged in the original action. If there had been some additional flooding, where are those allegations of the additional damages? This was all about what took place before the first action was even dismissed. For all of these reasons, as more fully set forth in our brief, we respectfully ask the court to affirm the lower court's decision. Thank you. Thank you. Mr. Manali. Chris Manali Gaham on behalf of the appellant. Just a couple quick things. Here's the order of August 11th in its entirety. Said motion is granted and the counterclaim for breach of the grant of easement and prayer for attorney fees are dismissed without prejudice. Counterplaintiff may file a fourth amended counterclaim by August 22nd, 2011. I consider myself to be a fairly simple person and I like to see things in simple terms. Just looking at the plain language of that, it seems like the court dismissed everything that was in the third amended counterclaim without prejudice, with leave to refile. There's a case that I cited in my brief, the Jackson case. Just to give you a little bit of background about the Jackson case, it was a pro se plaintiff that was filing a malpractice suit against a hospital. The original complaint was dismissed because there were some allegations that were not acceptable as far as malpractice. She was missing some things. And also the 622 affidavit from a licensed physician that's required in such malpractice claims wasn't missing. She was pro se, just didn't know any better. The court granted leave to replead and then further granted extensions to replead. The pro se litigant couldn't find an attorney to help her. She eventually took a voluntary dismissal. Within the one year window, she came back, repled, and after motion practice on a res judicata claim, the appellate court found that, well, it wasn't a final order that dismissed it. There was leave to replead. It seems very, very clear from this order, just me looking, I know it wasn't there, but I can read English and I can see it, that there was leave to replead. You may, counter plaintiff may file a fourth amended counterclaim by August 22nd. All the various, you know, allegations are dismissed without prejudice. It's open. And unfortunately, we're in this weird gray area where as, oh, we're in this weird gray area that, well, you come to trial on August 29th. There's nothing before the court as far as a pleading. My counsel had mentioned that, well, there was no, no prejudice. Well, it seems like he probably prepared for trial and his clients probably came expecting to try something, even if it wasn't before the court. If that's not prejudice, I would be prejudiced by that. I'd be mad if I, you know, spent my whole weekend doing this and showed up to nothing. But let me ask you this because, you know, this is the opposite. First of all, I love civil procedure stuff. I mean, I think of a DWP as always as an involuntary dismissal. And it seems, any cases where the plaintiff agrees to a DWP, in other words, is it because if it's voluntary, it seems like your clients agreed to it, then it becomes a, you know, it's a voluntary dismissal. I mean, we got a semantic game here, but if they, but maybe very, I'm not diminishing it, but it, your clients and their counsel basically agreed to this dismissal, correct? Well, it seems at least from the transcript that my client's counsel showed up and he was literally kind of doing the shoulder shrug. I said, well, my clients, we can't file this counterclaim. They're not ready to proceed to trial. I request that it's a DWP. And they left it with the court and the court was, you know, obviously confused because this is kind of an unusual thing. Like you said, yes, it usually is an involuntary type thing, but what else could it be? I guess I'm hanging my hat on that language from... The easy answer to that one is it could be a voluntary dismissal because I've never heard an abuse member in any case law where somebody, a plaintiff requests a DWP. I've never heard of that. I've heard of the other side requesting a DWP, not the actual litigant that it would be entered against. My only concern with that, and you know, I'm green, I'm young, I've never had a voluntary dismissal where I didn't file a motion asking for it. And the statute's very clear. It says on notice of motion to the other side, then you can take your voluntary dismissal. Outside of that statutory language, maybe the court has that power, but if a statute speaks to it, I don't see how you could get around that. Well, you can, I think, by participating in this hearing on the discussion on that without objecting to the lack of notice in motion. In other words, generally, if you're entitled to notice, but then you participate voluntarily and don't object to the lack of notice, you waive that issue. I've never actually seen... I understand what you're saying, Your Honor. I've never seen it in the context of a voluntary dismissal order, and it's probably because the issue isn't that important to go to the appellate court. But again, it would be my position that, well, outside of that statutory language, I'm going to have to hang my hat on that. The only other thing to bring up would be the statement of the court's intent. Again, I really highly bold underline italicize it's a really bad idea to open up a slippery slope where a trial judge who's presided over the previous proceedings can look at anything besides the record itself. I'm looking here at the actual order. There's nothing in the August 11th order that says what the counsel did raise the idea of adjudicative facts. It's the Davis case. It was a criminal case, and in that case, the trial judge had made notice of an order that was entered in a previous case in sentencing. I don't do a lot of criminal law. It's something to do with sentencing or something. But the important part is that it was just the fact of an order being entered. There was no legal analysis under that order. There was no intention of why that order was entered. It was just the fact. And as evidence is, you can enter evidence as long as there's some basis for its reliability. Treatises, for example, they're published. Newspapers are published. You can go and check that out. Same with an order. You can go down to the courthouse and look at the file to see if an order was entered. When I... Thank you. Oh, I can finish my sentence. Well, I can't go and examine the judge's head. I guess that's my point. It's not something that's transparent. Thank you. Thank you. We thank both of you for your arguments this afternoon. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court will now stand in brief recess for a panel change.